# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                           No. 1:18-cr-03676-JCH

ANTHONY DURAN, *also known as*
"*Dizzy*," and GLORIA DURAN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Government's "Motion for Reconsideration" (ECF No. 106). In its motion, the Government asks the Court to reconsider its prior Memorandum Opinion and Order (Order) which resulted in the exclusion of evidence of heroin, a cutting agent, five cell phones, and United States currency that was supposedly found in Defendant Anthony Duran's possession in December 2014. After considering the Government's motion, the Defendants' response briefs in opposition (ECF Nos. 108 and 109), and the Government's reply brief (ECF No. 111), the Court concludes that the motion should be **GRANTED**.

**I.  BACKGROUND**

Mr. Duran was incarcerated from August 7 – December 3, 2014, at which time he was released on probation and parole. According to the Government, during a December 17, 2014 search of Mr. Duran's vehicle by his supervising probation and parole officers, officers found heroin wrapped in a clear plastic baggie, a cutting agent, $1,926 cash, and five cell phones. Officers photographed these items. As a result of this conduct, New

Mexico authorities charged Mr. Duran with, and in February 2015 he pleaded guilty to, trafficking a controlled substance (distribution). Mr. Duran was reincarcerated from December 17, 2014 to September 9, 2016. The Government disclosed this evidence to Mr. Duran on January 8, 2020.

In response, Mr. Duran moved *in limine* to preclude the Government from introducing evidence of his "prior crime, the arrest, and conviction," and moved to exclude "testimony, evidence and the photos related to" the search that turned-up the incriminating evidence. ECF No. 85, 3, 6. He argued, among other things, that during October 2019 *James* hearings, the parties stipulated on the record that Mr. Duran was in jail for "unrelated drug issues." *Id*. at 2. In its opposition brief to Mr. Duran's motion *in limine*, the Government argued that the criminal evidence from the December 17 search is "intrinsic" evidence of the current charge. Alternatively, the Government argues that the evidence is other-acts evidence admissible under Federal Rule of Evidence 404(b).

The Government did not address the purported stipulation from the *James* hearing with any counterinterpretation or argument. Indeed, the only time that the Government mentioned any such stipulation was in a footnote in which it said it was prepared to enter a stipulation concerning the dates of Mr. Duran's incarceration, but that the one drafted by Mr. Duran "contain[ed] unnecessary and potentially misleading language that [Mr. Duran] was incarcerated 'due to unrelated drug charges.'" ECF No. 97, 4 n.2

In his reply brief, Mr. Duran amplified his argument that the Government had previously stipulated that he was in jail before and after the December 17 search because of "unrelated drug charges," and therefore admission of the evidence from the December

2

17 search would violate the stipulation. He attached to his reply brief an unsigned written stipulating which read: "The United States and Anthony and Gloria Duran stipulate that from [dates omitted] Anthony Duran was incarcerated due to unrelated drug charges." ECF No. 100-2. He also included September through October 2019 emails between the prosecution and defense teams, which shows the prosecution team accepting the stipulation in an October 3, 2019 email. The Government filed no surreply that specifically contradicted this evidence nor did the Government dispute the *James* hearing record.

With the stipulation in place, the Court agreed with Mr. Duran that the Government was precluded from introducing the December 17 evidence given that the evidence stemmed from unrelated drug charges and granted his motion in its entirety. The Government moved the Court to reconsider, which the Court will explain in more detail in the sections that follow.

## II. LEGAL STANDARD

"Borrowing the standards for civil cases, a motion to reconsider is warranted 'when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice.'" *United States v. McCluskey*, No. CR 10-2734 JCH, 2013 WL 12329343, at *2 (D.N.M. Oct. 7, 2013) (other citations omitted)). "A motion for reconsideration is not appropriate to rehash arguments previously addressed, but a district court has broad discretion to reconsider its interlocutory rulings before the entry of judgment." *Id*.

## III. DISCUSSION

The Government advances three arguments for why reconsideration is warranted. First, the Government contends that the written stipulation attached to Mr. Duran's reply brief is not part of the judicial record and does not capture the parties' intentions. The Government contends that the only stipulation of record appears at the *James* hearings, where the parties only discussed and stipulated to Mr. Duran's dates of incarceration, but did not otherwise stipulate to language concerning "unrelated charges." In a March 5, 2020 status conference, the Government tendered emails drafted before the stipulation was written in which the prosecutor wrote that the parties had "previously discussed entering into a stipulation regarding [Mr. Duran's] imprisonment to avoid the potential prejudice of presenting a witness and records documenting the relevant periods of his incarceration," and then asked the defense, "[h]ave you drafted that stipulation yet?" ECF No. 106, 1. The Government argues that this e-mail tends to show that the context and the purpose of the stipulation was to narrow the presentation of trial evidence and minimize damaging information about Mr. Duran's criminal record.

Second, the Government argues that if the draft stipulation at ECF No. 100-2 is enforceable, then the Court should partially reconsider its Order to allow the Government to introduce evidence of the five-cell phones and the $1,926 cash, because the state drug trafficking charge supposedly did not encompass that evidence.

Third, the Government argues that Court has a "duty to ensure that stipulations admitted into evidence are accurate," ECF No. 106 at 8, and that Mr. Duran's interpretation of the draft is misleading and inaccurate, and therefore the Court is duty-bound to reject it.

The Court will grant the motion to reconsider based on the Government's first argument. The Government has sufficiently shown that the draft, unsigned stipulation at ECF No. 100-2 is not a clear expression of the parties' intent and relief should be granted to correct clear error. Concerning stipulations, they are enforceable "absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement." *United States v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980). Here, the Court cannot glean the parties' true intent based on the draft, unsigned stipulation itself. And documents that supposedly aid its interpretation – the Government's March 5, 2020 email tendered to the Court, and email correspondence included in Mr. Duran's reply brief – do not clarify exactly what the parties had in mind. The Government argues, plausibly, that the stipulation was "to avoid the potential prejudice of presenting a witness and records documenting the relevant periods of his incarceration." ECF No. 106, 1. Mr. Duran, in contrast, interprets the stipulation more narrowly, emphasizing the penultimate "unrelated charges" component of the stipulation. The parties advanced these alternative interpretations at a March 5, 2020 status conference, making clear to the Court that there has been no meeting of the minds regarding the stipulation's purpose.

Therefore, the Court turns to the only stipulation that is actually in the judicial record. On page two of Mr. Duran's motion *in limine*, he argues that at the *James* hearings the parties stipulated on the record that Mr. Duran was in jail on certain dates because of unrelated drug charges. But a review of the *James* transcript cited by Mr. Duran shows that the parties only stipulated to Mr. Duran's dates of incarceration. The word "unrelated" does not appear in the portions of the transcript cited by Mr. Duran and therefore the Court does

not deem his interpretation as controlling. And while it is bothersome that the Government only disputed the *James* record for the first time in its motion to reconsider, the Court will not enforce the erroneous interpretation of the record that Mr. Duran advances. Accordingly, the Court defers to the enforceable stipulation in the judicial record that Mr. Duran was incarcerated from August 7 – December 3, 2014 and then from December 17, 2014 to September 9, 2016.

This stipulation is no bar to admitting the evidence as intrinsic. "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Lambert,* 995 F.2d 1006, 1007 (10th Cir. 1993). When such other-acts evidence is intrinsic, it is admissible without regard to Rule 404(b)'s prohibits. *See United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014). However, "[s]uch intrinsic 'other act' evidence, although not excluded by 404(b), is still subject to the requirement of Fed. R. Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *Lambert*, 995 F.2d at 1007–08 (10th Cir. 1993) (citation omitted).

The Court will allow admission of all the evidence found in Mr. Duran's vehicle as intrinsic evidence of conspiring to distribute illegal drugs. Mr. Duran claims that the Government can show "no connection" between the evidence and the "alleged supply of heroin to the Romero DTO." ECF No. 85 at 3. But the evidence is in fact probative of Mr. Duran's alleged affiliation with Ivan Romero and other facts of the conspiracy. First, the Government proffers that one of the five cell phones in Mr. Duran's possession was used

to communicate with Mr. Romero, thereby linking the men. Second, according to the Government, the large amount of cash in the car is explained by a drug payment from Mr. Romero three-days earlier. *See United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009) ("[I]ntrinsic evidence is directly connected to the factual circumstances of the crime[.]" (internal quotation marks omitted)). The evidence is also highly relevant given that it was discovered during the period of the charged conspiracy. To prove conspiracy, the Government must prove that Mr. Duran entered into an agreement to violate the law, knew the objectives of the conspiracy, and knowingly and voluntarily participated in it. *See United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013). The fact that the December 17 evidence links Mr. Duran to Mr. Romero and contextualizes some text message communication makes it more likely that Mr. Duran knew the conspiracy's objectives and voluntarily participated in it. *See United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994) (testimonial evidence about defendant's drug-dealing during the time frame of the conspiracy was intrinsic evidence and could be considered "part of the scheme for which defendant [was] being prosecuted." (citation and internal quotation marks omitted)).

Moreover, under controlling precedents, items such as "firearms, large sums of cash, weighing scales, and uncharged quantities of illegal drugs – are sufficiently probative to warrant admission under Fed. R. Evid. 403," and are commonly viewed as "tools of the trade," for illegal drug distribution and are "probative of an accused's participation in the drug distribution business and, more specifically, his or her participation in the charged distribution offenses." *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991). This Court, too, has admitted similar evidence as intrinsic evidence. *See United States v.*

*Topete-Madrueno*, No. 18-CR-4172 JAP, 2019 WL 5087410, at *2 (D.N.M. Oct. 10, 2019) (Parker, J.). Mr. Duran's suggestion that the quantity of heroin found in his vehicle was too small for street-dealing is belied by the presence of the cutting agent, which is suggestive of distribution. *See United States v. Richards*, 87 F.3d 1152, 1156 (10th Cir. 1996) (noting that cutting agents are often used by drug traffickers to mix with "pure" drugs and other substances). Accordingly, the evidence from the December 17 search is intrinsic evidence.

The Court next analyzes whether the December 17 evidence should be excluded pursuant to Rule 403. *See Lambert,* 995 F.2d at 1007–08. Rule 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "To be inadmissible under rule 403, evidence must do more than damage the Defendant's position at trial, it must make a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocense [*sic*] of the crime charged." *United States v. Burgess,* 576 F.3d 1078, 1099 (10th Cir. 2009) (quotations omitted). The Tenth Circuit "*favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule is an extraordinary remedy [that] should be used sparingly." *Watson*, 766 F.3d at 1241 (emphasis in original) (citations and internal quotation marks omitted). In conducting the Rule 403 balancing test, the district court considers "(1) whether the evidence was relevant, (2) whether it had the potential to *unfairly* prejudice the defendant, and (3)

whether its probative value was substantially outweighed by the danger of unfair prejudice." *Id*. (emphasis in original).

Here, the evidence is probative of Mr. Duran's conspiracy membership given that it was found during the conspiracy's operation, and also probative of Mr. Duran's relationship with Ivan Romero. The evidence probes why Mr. Duran possessed illegal drugs, a cutting agent, five cell phones, and a large sum of cash – and, as noted earlier possession of these items is "sufficiently probative to warrant admission under Fed. R. Evid. 403." *Martinez*, 938 F.2d at 1083. While the evidence is certainly prejudicial, Rule 403 only protects a party from unfair prejudice. *See Watson*, 766 F.3d at 1242. In this regard, "the prejudicial effect stemming from the capacity of certain evidence to rebut a defendant's exculpatory theory alone is not usually enough to establish *unfair* prejudice." *Watson*, 766 F.3d at 1242 (citations omitted). Nor does the Court find that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Mr. Duran believes that the evidence would impugn his character and portray him as a drug dealer with a criminal propensity. But Mr. Duran is so far disputing his *involvement* in the conspiracy, and the evidence, which links him to other charged conspirators and contextualizes coconspirator statements, does not reflect any worse on his character nor invite the jury to make a decision based on emotion.

**IT IS THEREFORE ORDERED that** the Government's "Motion for Reconsideration" (**ECF No. 106**) is **GRANTED**. The Government may present at trial testimonial, photographic, and documentary evidence of heroin, a cutting agent, five cell phones, and United States currency.

**IT IS SO ORDERED**.

_____
JUDITH C. HERRERA
SENIOR UNITED STATES DISTRICT JUDGE