UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 1:18-cr-03676-JCH

ANTHONY DURAN, *also known as*
"*Dizzy*" and GLORIA DURAN,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Government's Motion *in Limine* to Preclude Defendants from Offering Certain Plea Agreements at Trial (Govt.'s Mot., ECF No. 128). After carefully considering the motion, Defendants' Joint Response (Defs.' Resp., ECF No. 137), the Government's Reply (Govt.'s Reply, ECF No. 140), and being otherwise fully advised, the Court concludes that the motion will be granted.

**I.   Background**

The Court has already extensively detailed the facts of this case in prior orders. *See* ECF Nos. 57, 94, 104, 105, 112. Familiarity with the case is presumed. The Court recounts only the facts necessary to decide the motion. Defendants are accused of supplying heroin to the Romero Drug Trafficking Organization (Romero DTO), a drug conspiracy that was federally prosecuted in 2015. *See United States v. Romero et al.,* No. 1:15-cr-04512-MV. The *Romero* case involved

numerous defendants.[1] Only three are relevant here: Ivan Romero, his brother Ricco Romero, and their mother Wilma Romero.

In December 2016 and January 2017, all three Romero family members entered into written plea agreements with the Government. Ivan pleaded guilty to two counts of the superseding indictment, conspiracy to distribute one-kilogram and more of heroin (Count 1) and conspiracy to commit money laundering offenses (Count 2). Wilma likewise pleaded guilty to Count 2 and also pleaded guilty to Count 7, which charged her individually with possessing heroin with intent to distribute it. Ricco pleaded guilty to a three-count information charging him with conspiracy to distribute 100 grams and more of heroin, conspiracy to commit money laundering offenses, and possessing firearms in furtherance of a drug trafficking crime.

According to the Government, text messages recovered from Ivan's cellular telephones led investigators to believe that Defendants were the Romero DTO's "source of supply" of heroin. Govt.'s Mot. at 2. In November 2018, a grand jury indicted Defendants with one-count of conspiring to distribute a substance containing heroin from February 2014, and continuing to on or about October 2015, in violation of 21 U.S.C. § 846. Indictment, ECF No. 2.

On March 13, 2020, Defendants filed a First Amended Joint Exhibit List. That list gave notice that Defendants intended to introduce at trial the plea agreements of eight of the nine *Romero* defendants. On April 29, the Government moved *in limine* to exclude all but one of these agreements.[2] Some of the Government's motion was mooted, however, by a Second Amended

---

[1] Ivan Romero, Ricco Romero, Wilma Romero, Nicholas Baca, Tyler Baker, Juanita Romero, Melissa Romero, Elena Carabajal, and "CW," a witness cooperating with the Government. According to the Government, every *Romero* defendant pleaded guilty to the superseding indictment or informations.

[2] The Government does not intend to exclude the plea agreement and addendum of its cooperating witness, CW.

Joint Exhibit List in which Defendants withdrew their notice to introduce many of these plea agreements. All that remains in dispute is the admissibility of the plea agreements of Ivan, Ricco and Wilma.[3] The Government argues that the plea agreements are (1) irrelevant and (2) contain hearsay.

## II. Legal Standards

### a. Rules 401 and 402

Fed. R. Evid. 401 provides that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a) and (b). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

### b. Rule 403

Fed. R. Evid. 403 also permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### c. Rules 801 and 802

Fed. R. Evid. 802 excludes statements that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Fed. R. Evid. 801(d)(2)(A) exempts from the hearsay exclusion a statement that is offered against an opposing party and:

> (A) was made by the party in an individual or representative capacity;
> (B) is one the party manifested that it adopted or believed to be true;

---

[3] Because Defendants no longer plan to introduce the plea agreements of Nicholas Baca, Tyler Baker, Juanita Romero, Elena Carabajal and Melissa Romero, the Court does not address arguments concerning those defendants.

3

> (C) was made by a person whom the party authorized to make a statement on the subject;
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(A)-(E).

### III. Discussion

#### a. Relevancy

#### 1. Evidence of the *Romero* Charging Period

First, Defendants argue that the plea agreements are relevant because they undermine the notion that Defendants supplied heroin to the Romero DTO. They note that "the Romero DTO began not later than 2012 and continued through 2015." Defs.' Resp. at 3. Here, the alleged conspiracy began "on a date unknown but not later than February 2014, and continuing to on or about October 2015." Indictment. Noting an unaccounted-for gap from 2012 to 2013, Defendants argue that "there must [have been] completely different suppliers in [this] time period." Defs.' Resp. at 3. The Government replies that "the Indictment and Superseding Indictment in [*Romero*] are not before the jury," and that prior charging decisions should be excluded because "many factors unrelated to guilt may influence those decisions and their admission therefore risks misleading the jury and confusing the issues." Govt.'s Reply at 7 (quoting *United States v. Reed*, 641 F.3d 992, 993 (8th Cir. 2011)).

The Government's motion to exclude the charging period of the indictment and superseding indictment in *Romero* is granted. This evidence may have some probative value, since it dovetails with Defendants' theory that other sources supplied the Romero DTO. However, the Government explains that its charging decision reflects its available evidence that Defendants' alleged participation in the conspiracy began no later than February 2014. Permitting evidence of

the *Romero* charging period could mislead the jury into thinking that Defendants were not participating in the conspiracy when no such determination has been made. The Court then would likely have to allow the Government to tell the jury about the state of its evidence before Defendants were indicted, which could result in jury confusion and delay. Because such a mini-trial could distract and confuse the jury, and because the probative value of the evidence is limited, evidence of the charging period from *Romero* is excluded.

### 2. Evidence of Ivan's and Ricco's Admissions Regarding Multiple Suppliers

Second, and related to their first argument, Defendants contend that the plea agreements show that the Romero DTO had "multiple suppliers," Defs.' Resp. at 3 (emphasis omitted), based on Ivan's and Ricco's plea admissions that they "purchased heroin from suppliers … in or around Albuquerque or Los Lunas." Plea Agreement of Ricco Romero ¶ 5(b) at 3, ECF No. 333 (Ricco Plea Agreement); Plea Agreement of Ivan Romero of Ivan Romero ¶ 5(b) at 3, ECF No. 328 (Ivan Plea Agreement).[4] The Government does not dispute the issue of multiple suppliers. It in fact acknowledges that multiple sources supplied the Romero DTO. *See* Govt.'s Reply at 6 (stating that it is "evident in the text messages recovered from Ivan Romero's telephones" that Defendants were not the exclusive source of supply to the Romero DTO). However, the Government maintains that "the fact that others may have also supplied heroin to the Romeros does not exonerate the defendants" and that it undisputed that multiple suppliers supplied the Romero DTO. *Id*. at 6 (uppercase text omitted).

The Court agrees with Defendants that the brothers' admissions that they "purchased heroin from suppliers … in or around Albuquerque or Los Lunas," would have a tendency to make the Defendants' alleged participation in the conspiracy less probable than it would be without the

---

[4] The Court references the plea agreements from *Romero*.

evidence under Fed. R. Evid. 401. Defendants have maintained that they did not supply heroin and that the Romero DTO obtained drugs from other sources, suggesting that this issue will be heavily disputed at trial. The Government may be correct that the fact that multiple persons supplied the drug conspiracy does not negate Defendants' own participation in that conspiracy. But given the "low threshold for relevancy," the evidence is relevant because it tends to casts doubt on the Defendants' participation in the conspiracy. *United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012).

However, the statements, though relevant, are inadmissible hearsay. The Government's motion to exclude them will ultimately be granted as explained in section III(b)(1).

### 3. Evidence of Ricco's Admissions Regarding Drug Quantities

Third, Defendants argue that the plea agreements are relevant because "[a]lthough Ivan … pled guilty to an offense of more than one kilo of heroin … Ricco … acknowledged his criminal involvement involved *less* than 100 grams of heroin." Defs.' Resp. at 3-4. (emphasis added). They say Ricco's plea admission "refute[s] the government's assertion that [Defendants] were … supplying over one kilo of heroin to the … Romero DTO." *Id.* at 4. The Government counters that this claim is factually incorrect. Ricco in fact "plead[ed] guilty to an Information charging, *inter alia*, that he 'conspired with others to possess with the intent to distribute, and to distribute*, 100 grams and more* of heroin.'" Govt.'s Reply at 5 (quoting Ricco Plea Agreement ¶ 3(a) at 2) (emphases in original). Ricco also admitted in his plea agreement "that the conspiracy to distribute controlled substances involved more than 100 grams of heroin." Ricco Plea Agreement ¶ 5(k) at 7. Given that Defendants "misread" Ricco's plea agreement, the Government rejects their argument that his plea agreement undermines the allegation that Defendants sell kilogram quantity or quantities of heroin. Govt.'s Reply at 5.

The Government is correct that Defendants have misstated admissions in Ricco's plea agreement. The Court has reviewed the portions of Ricco's plea agreement cited by the Government. Those portions indeed reflect that Ricco admitted to conspiring to distribute more – not less – than 100 grams of heroin. *See e.g.* Ricco Plea Agreement ¶ 3(a) at 2; ¶ 5(k) at 6-7. Ricco's plea agreement therefore does not, as Defendants claim, "tend to refute the allegation … that the Durans distributed specific amounts of heroin," and this evidence is excluded. Defs.' Resp. at 1.

#### 4. Wilma's Plea Agreement Is Excluded

Defendants fail to articulate the relevancy of Wilma's plea agreement or point to any specific relevant statements therein. The Government's motion to exclude Wilma's plea agreement is granted.

### b. Hearsay

#### 1. Opposing-Party Admissions under Rules 801(d)(2)(B)-(D)

The Court next analyzes applicability of certain exclusions to the hearsay rule that the Government contends do not apply. Defendants claim that the plea agreements qualify as "an opposing party's statement" exclusion from the rule against hearsay. Fed. R. Evid. 801(d)(2). At issue is the applicability of Rules 801(d)(2)(B)-(D). Defendants contend that the Government is a party opponent and that the agreements were an adoptive admission under Rule 801(d)(2)(B), because the prosecutor, who also prosecuted *Romero* "manifested that [the government] adopted or believed to be true the contents of … the … [*Romero*] plea agreements by signing and presenting them in federal court before a federal judge to secure a guilty plea and conviction." Defs.' Resp. at 5 (quotation marks omitted). Or they believe that the plea agreement statements were made with authorization under Rule 801(d)(2)(C), or made by a party's agent or employee under Rule

7

801(d)(2)(D) because "the plea agreements contain the statements of [the prosecutor] about the Ivan Romero DTO during his criminal prosecution of the Ivan Romero DTO." *Id*. at 6.

One of the few cases that Defendants cite in support of their arguments is this Court decision in *United States v. Ganadonegro*, 854 F. Supp. 2d 1088 (D.N.M. 2012). In *Ganadonegro*, mistrial was declared after a hung jury could not deliver a verdict in a prosecution for first-degree murder of a child. *Id.* at 1092. The Government's trial theory was that the defendant intentionally committed child abuse. *Id*. at 1095. During closing statements the prosecutor told the jury, "[j]ustice demands that you convict [the defendant] of first degree, intentional child abuse because he shook her knowingly, intentionally and willfully." *Id*. For retrial, however, the prosecution intended to argue a lower mens rea theory of liability. *Id*. at 1093-94. The defendant filed a pretrial motion to introduce the prosecutor's closing statement to the first jury as an opposing-party admission to show that the prosecution did "not know what [the defendant's] mens rea was, and that the United States [could not] prove a mens rea beyond a reasonable doubt." *Id*. at 1127. The Court granted the defendant's request and admitted the prosecutor's prior statement as a party-opponent statement concerning defendant's mental state. *Id*. at 1126-27.

Here, even assuming that a plea agreement is an opposing-party admission under Rule 801(d)(2), *Ganadonegro* is distinguishable. The defendant in *Ganadonegro* identified a prosecutor's prior statement that he wished admitted. By way of contrast, Defendants identified no statements by the *Romero* prosecutor that are contained in Ivan's or Ricco's plea agreements. The Government says that no such statements exist, and Defendants failed to show otherwise. This is problematic because it is Defendants' burden of proof to establish that an exclusion to the rule against hearsay applies. *See United States v. Samaniego*, 187 F. 3d 1222, 1224 (10th Cir. 1999) ("The obligation of establishing the applicability of a hearsay exception ... falls upon ... the

8

proponent of the evidence.") (citations omitted). Because Defendants identified no statements within the plea agreements made by the prosecutor that are party-opponent admissions under Rules 801(d)(2)(B)-(D), the Government's motion to exclude the hearsay in the plea agreements is granted. This includes the Romero brothers' admissions that they purchased heroin from suppliers in or around Albuquerque or Los Lunas.

### c. Residual Exception under Rule 807

Although the Government moved to exclude the plea agreements and admissions therein, it also acknowledged that Ivan's plea agreement or possible testimony may have a role to play. For instance, the Government noted how Ivan's admissions touch on "the scope and nature of the conspiracy," and that "[i]f the defendants can overcome the hearsay rule, Ivan['s] … factual admissions" would be relevant under Fed. R. Evid. 401(a) and (b). Govt.'s Reply at 7-8. Furthermore, in the hearsay argumentative section of the Government's reply brief it "concedes," *id*. at 10,  that Ivan's plea admissions could be admissible under Federal Rule of Evidence 807, which excludes from the rule against hearsay a statement that is "supported by sufficient guarantees of trustworthiness" and "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a). As stated by the Government,

> Ivan Romero's factual admissions in his Plea Agreement are supported by sufficient guarantees of trustworthiness when considering the totality of circumstances under which those statements were made and the corroborating evidence. Further, Ivan Romero's factual admissions may be more probative as to the nature and scope of the conspiracy than any other evidence that the parties could obtain through reasonable efforts (particularly during the coronavirus pandemic). Accordingly, provided that defendants waive their right to confront Ivan Romero, the United States is willing to stipulate that Ivan Romero's factual admissions in his Plea Agreement should be admitted in evidence under Federal Rule of Evidence 807.

Govt.'s Reply at 10 (uppercase text omitted).

Because the Government made this statement in its reply brief, the Defendants have not had an opportunity to respond to it. Given that the Government has suggested that Ivan's plea agreement could fit within the residual exception of Rule 807 and that his admissions concerning the scope and nature of the conspiracy could be relevant, the Court reserves ruling on the issue until it is fully briefed.

## IV.  Conclusion

Evidence of the *Romero* charging period, Ricco's admissions concerning drug quantities, and Wilma's plea agreement are excluded items under Fed. R. Evid. 402. Although Ricco's and Ivan's statements concerning multiple drug suppliers are relevant, the statements are inadmissible hearsay under Fed. R. Evid. 802. The Court does not adjudicate or decide the Government's arguments under Fed. R. Evid. 807 until that issue is fully briefed.

**IT IS THEREFORE ORDERED that** the Government's Motion *in Limine* to Preclude Defendants from Offering Certain Plea Agreements at Trial **(ECF No. 128)** is **GRANTED**.

**IT IS SO ORDERED**.

_____
JUDITH C. HERRERA
SENIOR U.S. DISTRICT JUDGE